

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00130-CV

_____

SHANE AND KRISTIE TRAHAN, Appellants

V.

JIMMY AND PEGGY METTLEN, Appellees

On Appeal from the 145th District Court
Nacogdoches County, Texas
Trial Court No. C1026890

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

O P I N I O N

Shane and Kristie Trahan bought 22.61 acres of land (the Property) from Jimmy and Peggy Mettlen. Sometime after the real estate transaction was completed, a dispute arose over ownership of the mineral interests in the Property. The Mettlens claimed that they retained ownership of the mineral interests, and the Trahans claimed that the interests were, or at least should have been, conveyed as part of the sale/purchase transaction. The Trahans ultimately filed a lawsuit in December 2010, more than four years after the real estate transaction closed, in an effort to secure ownership of the mineral interests in the Property. Two years into this litigation, the Mettlens filed a motion for summary judgment claiming that the Trahans' lawsuit was time-barred by the applicable four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008). In response, the Trahans asserted that the statute of limitations was tolled and that, as a result, their suit was timely. The trial court found that the statute of limitations barred the Trahans' lawsuit and granted summary judgment to the Mettlens. The Trahans appeal.[1]

The issues before this Court are whether the four-year limitation period applicable to the Trahans' cause of action was tolled or otherwise rendered inapplicable by the facts and circumstances of this case and, if so, for how long? We conclude that the Trahans' lawsuit was time-barred by the applicable statute of limitations, and we affirm the judgment of the trial court.

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

## I.      Factual Background

On March 9, 2006, the Mettlens and the Trahans entered into a written contract memorializing the terms of their agreement regarding the sale and purchase of the Property. There is no mention of a reservation of mineral rights in that contract. The warranty deed transferring title to the Property from the Mettlens to the Trahans, however, is a different story. That deed, executed April 10, 2006, and properly recorded in Nacogdoches County, Texas, on April 21, 2006, includes a clear reservation of mineral rights by the Mettlens.

With respect to the warranty deed, Shane Trahan testified that he was not given a copy of the deed when he purchased the property and that he first obtained a copy of the deed in September 2010. He acknowledged being present at the closing where the deed was executed but testified that he did not read the deed and that it was not physically delivered to him at that time. The Trahans contend that they were unaware of the reservation of mineral interests contained in the warranty deed until 2010, when they discovered oil and gas company vehicles on their property. They argue that the statute of limitations did not begin to run until that time.

## II.     The Parties' Contentions

In an effort to establish tolling of the applicable four-year limitations period, the Trahans rely heavily on the written contract, which states that the Trahans are purchasing the Property "with all rights, privileges and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships . . . ." The Trahans contend that the omission of even a reference to a reservation of mineral rights by the Mettlens in the written sales contract, which is a memorialization of the

3

parties' intentions, establishes that such a term was not a part of the bargained-for exchange. Consequently, the Trahans argue that, under the terms of the written agreement, they were entitled to a conveyance of the entirety of the ownership interest held by the Mettlens at the time the agreement was executed, including any mineral rights.

The Trahans testified via deposition that they believed they were purchasing both the surface and mineral interests in the Property and that they believed all such rights had been transferred to them through this transaction; however, they also admitted that the parties did not discuss ownership of mineral interests prior to executing the contract, including whether the Mettlens even owned any mineral interest that could be conveyed. Finally, the Trahans claim that the reservation of mineral rights was included in the warranty deed as the result of a mutual mistake and that, consequently, they are entitled to reformation of the deed to reflect the parties' original agreement.

## II. Standard of Review

When reviewing a trial court's decision to grant summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002) (per curiam); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the summary judgment movant must show that there was no material fact issue and that he or she was entitled to judgment as a matter of law. *McNamara*, 71 S.W.3d at 311; *Rhone-Poulenc, Inc.*, 997 S.W.2d at 223. Our review in this case may be broader, however, because both parties filed motions for summary judgment. *See Tobin v. Garcia*, 316 S.W.2d

4

396, 400 (Tex. 1958). When, as here, both parties file summary judgment motions and the trial court grants one motion and overrules the other, the proper disposition on appeal is for the reviewing court to render judgment for the party whose motion should have been granted. *Members Mutual Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex. 1984).

### III. Mutual Mistake or its Equivalent

A mutual mistake occurs when contracting parties have a common intention, but, due to a mutually-held mistake regarding a material fact, the written contract does not accurately reflect that intention. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987). "The elements of mutual mistake are thus (1) a mistake of fact, (2) held mutually by the parties, and (3) which materially affects the agreed-upon exchange." *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd).

The facts of this case do not establish the elements of mutual mistake in the traditional sense. However, the Supreme Court of Texas has held that "[u]nilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake." *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988); *Givens v. Ward*, 272 S.W.3d 63, 67 (Tex. App.—Waco 2008, no pet.). Here, the evidence is undisputed that the original contract to purchase the Property contained no reservation of mineral rights. Mrs. Mettlen testified that she called someone at the title company office and instructed them to include a reservation of mineral rights in the deed. The Trahans' testimony is that they did not know about Mrs. Mettlen's telephone call, that they were not aware of the reservation in the deed until 2010, and that the Mettlens never disclosed the reservation to them. Under these circumstances, we will assume that this

5

evidence is sufficient to establish the equivalent of a mutual mistake, that is, that the Trahans entered into the written real estate contract operating under a unilateral mistake regarding a material term of the agreement and that the Mettlens were aware of that mistake. Based on this assumption, reformation of the contract is a potentially appropriate remedy. However, whether that remedy has been invoked in a timely manner is actually the dispositive issue in this case.

## IV. Application of the Statute of Limitations

There is no dispute that, under the applicable statute of limitations, the Trahans had four years from the date their cause of action accrued to file suit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051. Likewise, there is no dispute that this suit was filed more than four years after the deed was executed. The Trahans contend, however, that the statute of limitations was tolled under the facts of this case because they did not discover the facts giving rise to their cause of action until 2010, almost four years after the real estate transaction at issue was completed.

The first step in analyzing this issue is determining when the Trahans' cause of action accrued. Generally, purchasers of real property are immediately charged with knowledge of all defects in the deed conveying title to the purchased property, though this presumption of immediate knowledge is rebuttable. *See Sullivan v. Barnett*, 471 S.W.2d 39, 45 (Tex. 1971).

If the mistake is plainly evident or clearly disclosed on the face of the deed, such as when the parties unquestionably agreed to a reservation of mineral interests by the seller but that reservation was omitted from the deed, all parties are chargeable with knowledge of the contents of the deed. *Stowe v. Head*, 728 S.W.2d 120, 124 (Tex. App.—Tyler 1987, no writ). The statute of limitations begins to run from either the date the deed was executed by the grantor or the date

6

it was delivered to the grantee. *See Sullivan*, 471 S.W.2d at 45; *Dickens v. Harvey*, 868 S.W.2d 436, 440 (Tex. App.—Waco 1994, no writ).

On the other hand, if the mutual mistake is not plainly evident on the face of the deed, but, instead, relates to the legal effect of a material term of the parties' agreement, the statute of limitations begins to run when the mistake was, or in the exercise of diligence should have been, discovered. *See McClung v. Lawrence*, 430 S.W.2d 179, 181–82 (Tex. 1968) (holding statute of limitations began to run upon discovery of ambiguity regarding legal effects of reservation of nonparticipating royalty interest); *Miles v. Martin*, 321 S.W.2d 62, 69 (Tex. 1959) (holding statute of limitations began to run upon discovery of mutual mistake as to effect of mineral interest reservation).

Finally, the subsequent conduct of the parties may rebut the presumption that all parties are charged with immediate knowledge of the mistake. In that event, the discovery rule delays the accrual date or tolls the running of the statute of limitations until the mistake is, or in the exercise of reasonable diligence should have been, discovered. *See Sullivan*, 471 S.W.2d at 45. Several instances of this are found in reported opinions. *See Hutchins v. Birdsong*, 258 S.W.2d 218, 220 (Tex. Civ. App.—Texarkana 1953, writ ref'd n.r.e.) (holding discovery rule tolled statute of limitations where grantee, who prepared deed including mineral rights, misrepresented to grantor that mineral rights not included in deed); *Sheffield v. Lewis*, 287 S.W.2d 531, 536 (Tex. Civ. App.—Texarkana 1956, no writ) (holding discovery rule tolled statute of limitations where grantor misrepresented to grantee that instrument was lease when it was mineral deed); *Luginbyhl v. Thompson*, 11 S.W.2d 380, 381 (Tex. Civ. App. 1928, writ dism'd w.o.j.) (holding

7

discovery rule tolled statute of limitations where deed failed to reserve mineral rights as contracted, buyer promised to correct deed, but later refused to do so); *Marshall v. Hutchinson*, 358 S.W.2d 675, 676 (Tex. Civ. App.—Amarillo 1962, no writ) (holding discovery rule tolled statute of limitations where deed described entire tract instead of agreed upon one half and grantee knew of mistake but acted as though deed was correct).

Returning to our facts, we have assumed that the evidence establishes a unilateral mistake on the part of the Trahans coupled with inequitable conduct—the failure to disclose the reservation of mineral rights prior to or even at the closing—by the Mettlens.  This is the equivalent of a mutual mistake and allows us to consider reformation.  However, the statute of limitations must be complied with as well.  The difficulty with the Trahans' position is that the deed unequivocally discloses the Mettlens' reservation of "any and all oil, gas and other minerals heretofore reserved . . . by such prior Grantors.  In addition, the Grantors . . . do hereby reserve unto themselves . . . all of the remaining oil, gas, liquid . . . that may be produced . . . ."  The reservation is set out immediately after the property description and is clear and obvious.  It does not require interpretation as to its legal effect.  There is no evidence that, after the execution of the deed, the Mettlens misled the Trahans or lulled them into a false sense of security that the mineral rights were conveyed in the deed or that the Mettlens attempted to hinder the Trahans from reading the plain provisions of the deed.  There was no claim that the reservation was ambiguous or could be interpreted in different ways—it is an express written reservation of all mineral rights.  The alleged mistaken term is clearly evident and disclosed in the deed; the parties are charged with the knowledge of the terms.  Consequently, the statute of limitations

begins to run from the date of execution of the deed by the grantor and the date of delivery to the grantee.[2] The discovery rule is inapplicable.

## V.  Fraudulent Concealment

The Trahans further allege that the Mettlens fraudulently concealed from them the fact that their reservation of mineral rights was included in the deed.  They further allege they had no knowledge of the reservation until mineral exploration began on their property.  They contend that the Mettlens' fraudulent concealment invoked the discovery rule, which, in turn, tolled the running of the statute of limitations until they actually discovered the reservation.

We have previously explained that the April 10, 2006, warranty deed conveying title to the Trahans contains a clear and unambiguous reservation of mineral rights.  The discovery rule for fraudulent concealment tolls the running of the statute of limitations only until the plaintiff discovers the fraud or could have discovered the fraud through the exercise of reasonable diligence.  *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (citing *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011)).  There is no evidence to suggest that, following their execution of the deed, the Mettlens engaged in any conduct designed to mislead the Trahans or prevent them from reviewing the warranty deed.  More importantly, however, even assuming that the evidence showed fraudulent concealment by the Mettlens, the Trahans could have immediately discovered such fraudulent conduct by the exercise of reasonable diligence (reading their deed).  However, the record reflects that the Trahans, who were present when the warranty

---

[2]The Trahans maintain that the deed was never delivered to them, and it is true that the original recorded deed was found at the title company when this suit began.  However, we believe the Mettlens did all they are required to do when they attended the closing of the transaction, signed the deed, and thereby delivered it over to the Trahans.

9

deed was executed, failed to discover this mineral reservation even though it is clearly disclosed in the deed. Consequently, whether the discovery rule applied under the theory of fraudulent concealment or not, it did not operate to toll the running of the statute of limitations on the Trahans' cause of action.

For these reasons we affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted: January 28, 2014
Date Decided: April 9, 2014